Case No.11-81329-Civ-Hurley/Hopkins

UNITED SUBCONTRACTORS, INC.,
a foreign corporation,

        Plaintiff,

vs.

RONALD GODWIN, an individual,
and INSTALLED BUILDING PRODUCTS, INC.,
a foreign corporation.

        Defendants.

_____/

FILED by _____ D.C.

**FEB - 3 2012**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION AS TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DE 4)

**THIS CAUSE** has come before this Court upon an Order Referring Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Expedited Hearing and Incorporated Memorandum of Law (DE 4) to the undersigned United States Magistrate Judge for a report and recommendation. (DE 5). This Court issued a report and recommendation recommending denying the Temporary Restraining Order (DE 6), which the District Court adopted (DE 26). On January 3 2012, this Court conducted an evidentiary hearing on the Motion for Preliminary Injunction ("Motion"), and ordered additional briefing, which the parties supplied. The matter is now ripe for review. For the reasons that follow, this Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Preliminary Injunction (DE 4) as to Defendant Godwin as stated below.

## BACKGROUND

Plaintiff filed its Verified Complaint (DE 1) on December 5, 2011, alleging Breach of Contract - Non-Competition Provision by Defendant Ronald Godwin (Count I); Breach of Contract - Confidentiality Provisions by Defendant Ronald Godwin (Count II); Breach of Contract - Non-Solicitation Provisions by Defendant Ronald Godwin (Count III); Tortious Interference with Contractual Relationship by Defendant Installed Building Products ("IBP") (Count IV); Tortious Interference with Advantageous Business and Contractual Relationship by Defendants Ronald Godwin and IBP (Count V). (DE 1). A copy of the "Employment Agreement" between Ronald Godwin and USI entered into on August 29, 2005 is attached to the Complaint. *Id.* Plaintiff seeks injunctive relief and damages. *Id.* The Complaint alleges that this Court has jurisdiction pursuant to 28 U.S.C. § 1332; that USI is a citizen of Utah and Minnesota and does business in Florida; that Defendant IBP is a foreign corporation with its principal place of business in Ohio; and that Defendant Godwin is a citizen of Florida. *Id.*

At the evidentiary hearing the parties introduced evidence in the form of witness testimony and declarations which shows that in August of 2005, USI purchased substantially all assets of Professional Insulators, Inc., where Defendant Godwin worked at that time, and Defendant Godwin began working for USI as a sales manager. (DE 24, p. 2). There is a dispute as to Defendant Godwin's title at USI. According to USI, as a condition of employment with USI, Defendant Godwin executed an Employment Agreement on August 29, 2005 ("2005 Agreement") (DE 24, p. 3). USI introduced the original 2005 Agreement into evidence. Defendant Godwin denies ever signing that document. Defendant Godwin admits that he had an Employment Agreement with Professional Insulators, Inc., which was executed on July 1, 2003 ("2003 Agreement").

Defendant Godwin resigned his position with USI on October 21, 2011 (DE 24, p. 8), and began his employment with Defendant IBP on October 24, 2011. Both USI and IBP are in the business of installing insulation. Therefore, USI contends that Defendant Godwin violated non-competition, non-solicitation and nondisclosure of confidential information clauses of both 2003 and 2005 Employment Agreements and that IBP induced or assisted Defendant Godwin in doing so.

USI requests preliminary and permanent injunctions restraining (1) Defendant Godwin from utilizing and/or disclosing USI's confidential information and/or trade secrets; (2) Defendant Godwin from soliciting USI's customers, clients, referral sources, or USI's employees, agents, or independent contractors; (3) Defendant IBP from interfering with the contractual business relationship between Defendant Godwin and USI; (4) Defendant IBP from continuing to employ Defendant Godwin or otherwise assist him in the breach of his Employment Agreement with USI; and (5) Defendants Godwin and IBP from engaging in tortious interference with contractual business relationships between USI and its customers, clients and referral sources.

## DISCUSSION

### I. Legal standard

Federal Rule of Civil Procedure 65 governs preliminary injunctions with notice to the adverse party. Fed. R. Civ. P. 65(a). "A district court may grant an injunction if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). A preliminary injunction is an extraordinary remedy, and movant must clearly establish the

burden of persuasion as to the four requirements. *Id.* A court may only issue a preliminary injunction if the movant gives security that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined. Fed. R. Civ. P. 65(c).

At the preliminary injunction stage, a court may rely on affidavits and hearsay materials which would not be admissible for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceedings. *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

The Complaint contains essentially two common law causes of action: breach of contract and tortious interference with contractual and advantageous business relationship. This is a diversity case, and state law will supply the rule of decision on substantive issues. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Florida law governs both 2003 and 2005 Agreements. (DE 1, p. 32; DE 13-1, p. 6).

## II. Discussion

### A. Substantial likelihood of success on the merits

#### 1. Breach of contract claims

In Florida, the elements of a breach of contract claim are (1) a valid contract; (2) a material breach; and (3) damages. *Abbott Lab., Inc. v. General Elec. Capital*, 765 So.2d 737, 740 (Fla. 5th DCA 2000).

##### a. Plaintiff did not clearly establish that Defendant Godwin signed the 2005 Agreement

Plaintiff introduced into evidence the original 2005 Employment Agreement, and Declaration of Jack Thomas, Jr. (DE 22), former Vice President of Professional Insulators, stating that Mr. Thomas personally witnessed Defendant Godwin sign the 2005 Agreement at the closing for the

asset purchase. However, Mr. Thomas did not testify and was not subject to cross examination to ascertain the strength of his recollections of the events that took place in 2005 and personally authenticate Defendant Godwin's signature. Plaintiff did not introduce any evidence by a handwriting expert or by a lay person familiar with Defendant Godwin's signature that the signature on the 2005 Agreement is, in fact, Defendant Godwin's signature. The signature on the 2003 Agreement, which Defendant Godwin admits he signed, does not look identical to the signature on the 2005 Agreement. When asked for the reasons for not bringing a witness to authenticate the document, Plaintiff's counsel stated that based on the Court's order setting the hearing, short notice for the hearing, and only a two-hour time frame allotted for the hearing, he believed that the Court would be willing to consider affidavits and declarations rather than live testimony. (Tr. pp. 15-17).

Defendant Godwin testified that he did not sign the 2005 Agreement, and that contrary to Mr. Thomas' declaration, he did not go to the closing for the asset purchase. (Tr. pp. 105 - 112). Defendant Godwin testified that he remembered the events that took place on August 28, 2005, the day prior to the closing, because it was his mother's birthday and because the news that Professional Insulators was selling the company to USI affected his future and caused a disruption to the schedule with his family because he had to go to Professional Insulators' office in Delray Beach on Sunday August 28, 2005, and then set up meetings with customers the next day. *Id.* In fact, on August 29, 2005, the date on the 2005 Agreement, Defendant Godwin went to meet with clients in Melbourne and Vero Beach, Florida, and therefore did not go to the closing. *Id.* While Defendant's Godwin credibility is not completely unshakable,[1] Defendant Godwin was subject to cross examination, while

---

[1] For example, Defendant Godwin testified that, contrary to USI's assertion that he solicited Aaron Wilson on behalf of IBP, he specifically flew to Denver to meet with Aaron Wilson on behalf of USI in October of 2011 chiefly due to Mr. Wilson's complaints of USI's

Mr. Thomas was not and it is impossible to ascertain his credibility based only on his affidavit. Contrary to Plaintiff's position that the allotted time for the hearing was so short as to make an impression that an affidavit rather than a witness would be appropriate, the Order setting the evidentiary hearing provided that should more time be required the party in need of such time should notify the Court (DE 7). In fact, Plaintiff's witness, Mr. Portland, was present and testified at the hearing. Defendants filings clearly made it known that the validity of the 2005 Agreement was questioned. However, Plaintiff's counsel was not "even sure that Mr. Thomas was even available" to be at the hearing. (Tr. p. 16). Therefore, Plaintiff's reasons for not evidently even attempting to arrange for Mr. Thomas or another witness to the signing of the 2005 Agreement to testify are unconvincing.

Additionally, Defendants make valid points that the identification number is absent on the title and signature pages of the 2005 Agreement; and that paragraph 8(iii) of the 2005 Agreement, the restrictive covenants, begins to refer to "Shareholder's employment with Purchaser" whereas in prior paragraphs the document referred to the "Employee" to be employed by the "Company." The combination of these facts precludes finding that Plaintiff clearly established the validity of the 2005 Agreement that was presented to the Court. While discovery and further proceedings may lead to a contrary conclusion, this Court recommends that the District Court find that Plaintiff did not clearly establish for the purposes of the preliminary injunction that Defendant Godwin signed the 2005 Agreement.

---

level of service (Tr. pp. 138-39). At the same meeting Mr. Wilson and Defendant Godwin took a few minutes in private "to discuss Mr. Holbrook's situation." *Id.* However, Mr. Wilson's declaration introduced by IBP apparently without Defendant Godwin's knowledge states that the October 2011 meeting "lasted five minutes and our discussion centered on the well being of a mutual friend of ours." (Wilson Decl. DE 9). Therefore, there is a discrepancy between these two accounts, which creates a reason for questioning.

**b. Plaintiff has shown substantial likelihood of success on the merits of the breach of contract claims based on the 2003 Agreement**

### i. The 2003 Agreement is an enforceable contract

Plaintiff argues in the alternative that the 2003 Agreement between Professional Insulators and Defendant Godwin is enforceable by USI, and that USI can establish that Defendant Godwin violated the 2003 Agreement. Defendant Godwin does not dispute signing the 2003 Agreement (Tr. pp. 103) but argues that it is not enforceable by USI for three (3) reasons:(1) USI is a third party to the 2003 Agreement entered into by Professional Insulators and Defendant Godwin and cannot enforce it without a valid assignment; (2) USI breached the employment agreement by allegedly failing to pay Defendant Godwin $86,000 in bonus funds due to him for 2010; and (3) restrictive covenants of the 2003 Agreement are not reasonable and are unenforceable under Florida law.

### (1). USI is a successor of Professional Insulators

Florida Statute §542.335(1)(f)(2) provides in pertinent part:

> (f) The court shall not refuse enforcement of a restrictive covenant on the ground that the person seeking enforcement is a third-party beneficiary of such contract or is an assignee or successor to a party to such contract, provided: [. . .] In the case of an assignee or successor, the restrictive covenant expressly authorized enforcement by a party's assignee or successor.

Paragraph 12 of the 2003 Agreement states that "This Agreement shall be governed by the laws of the State of Florida with the venue for any such proceedings being Palm Beach County, Florida, and shall be binding upon the heirs, successors and executors of the parties hereto" (Exh. 1 to Decl. of Ronald Godwin, DE 13-1). Therefore, the Court must resolve whether USI can enforce the 2003 Agreement as a successor company.[2]

---

[2]The parties spend a substantial amount of effort arguing about assignments, including lack of assignment by Godwin of the 2003 Agreement to the Plaintiff. However, the statute allows for enforcement of restrictive covenants by a party's assignee <u>or</u> successor, and the 2003

The 2003 Agreement was entered into by Defendant Godwin and Professional Insulators Holdings, Inc. and Professional Insulators, Inc., collectively the Employer under the Agreement. (Exh. 1 to Decl. of Ronald Godwin, DE 13-1). Defendant Godwin states that in 2005 USI "acquired" Professional Insulators (Decl. of Ronald Godwin, DE 13), and testified that Professional Insulators were sold to USI (Tr. p. 104). Plaintiff states that USI acquired substantially all of the assets of Professional Insulators Holdings, LLC, Professional Insulators of South Florida, Inc., Professional Insulators of Orlando, Inc., and Professional Insulators of the Treasure Coast, Inc., including Godwin's restrictive covenant agreement (DE 23). While in filings made after the evidentiary hearing, Defendants attack the asset purchase agreement because it was not introduced into evidence, both sides have referred to the asset purchase, and therefore the evidence establishes that USI acquired substantially all assets of Defendant Godwin's employer in 2003, Professional Insulators. Defendant Godwin introduced into evidence at the hearing Professional Insulators Holdings, Inc.'s amendment to the articles of incorporation changing the name to Pro Service Holdings, Inc., and Pro Services Holdings, Inc.'s filing made with Florida's Secretary of State on March 30, 2011 (Defendant's Exh. 1), which establish that the company is still in existence. Defendant Godwin also testified that USI leased Professional Insulator's property after the asset purchase. (Tr. pp. 112-13).

However, the fact that Professional Insulators still exists, albeit under another name, does not preclude USI from being its successor. In Florida, a corporation that sells its assets may continue in existence, may dissolve, or may merge with the purchasing entity. *Corp. Express Office Prod. v. Phillips*, 847 So. 2d 406, 412 (Fla. 2003). Defendants argue that the definition of "successor"

---

Agreement is binding upon successors to the parties to the Agreement. Therefore, the issue is whether USI is a successor.

contemplates a merger based on the definition of the term by Black's Law Dictionary as well as a case that relied upon Black's and another case from the Western District of Oklahoma. *Corneal v. CF Hosting, Inc.*, 187 F.Supp. 2d 1372, 1375 (S.D. Fla. 2001) (citing *Int'l Ass'n of Machinists v. Shawnee Indus.*, 224 F. Supp. 2d 347, 352 (W.D Okla. 1963)). However, Florida courts refer to companies that purchase assets as successors. *See Corp. Express*, 847 So.2d at 412 (Fla. 2003); *Bernard v. Kee Mfg. Co.*, 409 So.2d 1047, 1049 (Fla. 1982); *Krogen Express Yachts, LLC v. Nobili*, 947 So.2d 581, 582 (Fla. 4th DCA 2007).

Here, Margaret Richter, who has served as USI's Vice President of Human Resources since February 28, 2005, in her declaration states that USI bought Defendant Godwin's 2003 Agreement as part of the asset purchase in August of 2005 (DE 24), and, while Defendants argue that the asset purchase agreement has not been introduced into evidence, they did not introduce any evidence to the contrary either.[3] Also, USI continued to employ Defendant Godwin and pay his salary. Therefore, this Court recommends that the District Court find that USI is a successor of Professional Insulators when it comes to the enforcement of the 2003 Agreement between Professional Insulators and Defendant Godwin.

### (2). USI did not breach the Employment Agreement

Defendants argue that USI failed to pay Defendant Godwin $86,000 in bonus funds for 2010, which would bar Plaintiff's enforcement of the Employment Agreement. In Florida, if the employer

---

[3]Defendants moved to strike Plaintiff's Reply, which included the Asset Purchase Agreement as an Exhibit. However, even without this new submission, there is evidence that USI purchased the 2003 Agreement.

Plaintiff obtained the Court's permission to file a Reply, which was given in light of the fact that Local Rules allow parties to file replies, *see* S.D. Fla. L.R. 7.1(c), and because prolonging the procedures was not going to prejudice Defendants in any way whatsoever. Therefore, this Court recommends that the District Court deny Defendant IBP's Motion to Strike (DE 39).

wrongfully refuses to pay the employee his compensation, the employee is relieved of any further obligation under the non-compete contract and the employer cannot obtain an injunction. *Benemerito & Flories, M.D., P.A. v. Roche*, 751 So.2d 91, 93 (Fla. 4th DCA 1999).

Here, Defendant Godwin relies on a copy of the 2010 incentive plan that was entered into evidence as an attachment to Margaret Richter's declaration (DE 24, p. 62), and states that USI failed to pay him $86,000 of the bonus (Tr. pp. 125-26). The Incentive Plan specifies that Defendant Godwin would be entitled to a sum between $0 to $130,000 depending on his performance, and does not include any calculations pertaining to the actual performance (DE 24, p. 62). Both Mr. Portland and Defendant Godwin testified that USI paid Defendant Godwin $44,000 of the bonus (Tr. pp. 39-41; 125-26). Mr. Portland testified that it was later determined that USI overpaid Defendant Godwin by $15,000 but a decision was made not to seek reimbursement (Tr. pp. 40, 47), and that Defendant Godwin never represented to Mr. Portland that USI owed him any more money (Tr. p. 39), even when they had the conversation with Defendant Godwin about his departure from USI. Defendant Godwin's e-mail to Margaret Richter about his last day with USI is attached to Ms. Richter's declaration (DE 24, p. 75), and mentions nothing about the $86,000 allegedly owed. Defendant Godwin testified that his salary with USI was $130,000 per year, and that he was supposed to receive his full $130,000 potential bonus, as opposed to $44,000 that he actually received (Tr. pp. 125-26). Therefore, $86,000 would have been a substantial portion of his income.

While Defendant Godwin testified that he "discussed" the issue of the underpaid bonus with Tom Adams, his boss, and Margaret Richter at an unspecified time (Tr. p. 126), it is highly unlikely that, while parting ways with USI, Defendant Godwin would have omitted to mention to Mr. Portland and Ms. Richter that USI still owed him $86,000, if this amount was, in fact, owed.

Therefore, this Court recommends that the District Court find that USI did not breach the Employment Agreement.

### (3). The restrictive covenant is enforceable in a modified form

Section 542.335 of the Florida Statutes governs validity of restrictive covenants entered into after 1996. Fla. Stat. § 542.335; *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009). The party seeking enforcement of a restrictive covenant must establish the existence of one or more legitimate business interests justifying the restrictive covenant. Fla. Stat. § 542.335(1)(b). Legitimate business interest may include trade secrets; valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers; or customer goodwill associated with: an ongoing business by way of trade name, trademark, service mark, or "trade dress," or a specific geographic location, or a specific marketing or trade area. *Id.* The party seeking enforcement must also plead and prove that the restrictive covenant is reasonably necessary to protect the legitimate business interest to establish the prima facie case. Fla. Stat. § 542.335(1)(c).

Information that is not available to the public and is integral to the company's success can constitute "confidential business information" under Section 542.335 of the Florida Statutes. *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1234, n. 11 (11th Cir. 2009) (mere identity of the clients and pricing structure may not be sufficient to justify a restrictive covenant); *AutoNation, Inc.v. O'Brien*, 347 F. Supp. 2d 1299, 1305 (S.D. Fla. 2004) (defendant's access to plaintiff's internal business performance reports as well as policies, procedures, systems, vehicle programs and practices was sufficient to enforce a non-compete agreement); *Deloitte & Touche USA LLP v. Lamela*, 1542-VCP, 2007 WL 1114075, at *7 (Del. Ch. Apr. 6, 2007) (lack of access to nonpublic

pricing information of the plaintiff prevented finding that plaintiff established legitimate business interest on the basis of confidential business information (applying Florida law)); *Anich Indus. v. Raney*, 751 So.2d 767, 771 (Fla. 5th DCA 2000) (information commonly known in the industry cannot be the basis for a legitimate business interest). Generally, the higher the responsibilities of the employee against whom enforcement of the restrictive covenants is sought, the more likely is the finding of legitimate business interest. *AutoNation, Inc.v. O'Brien*, 347 F. Supp. 2d 1299 (S.D. Fla. 2004) (preliminary injunction issued against former manager of used vehicle operations who went on to work for a direct competitor); *Anich Indus. v. Raney*, 751 So.2d 767 (Fla. 5th DCA 2000) (no protected interest justifying an injunction was found where enforcement was sought against a former sales person who worked for the plaintiff company for approximately three months).

Once the prima facie case is established, the party opposing enforcement must establish that the restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest. *Id.* When restrictive covenant sought to be enforced against a former employee, a court shall presume reasonable in time any restraint of six (6) months or less and shall presume unreasonable any restraint lasting more than two (2) years. Fla. Stat. § 542.335(1)(d)(1)(a).

Here, the restrictive covenant of the 2003 Agreement states:

7. LOYALTY:

(a) [. . .]

(b) The EMPLOYEE will not either during the term of his employment or any time thereafter, disclose to any person, firm or corporation, or any other entity whatsoever, any information concerning the business or affairs of the EMPLOYER, which he may have acquired in the course of or as incidental to his employment hereunder, said information including but not limited to customer information, customer lists, business, trade secrets or information, cost information or pricing information. That any customer lists and/or accounts procured in whole or in part by the EMPLOYEE

during the term of his employment shall become and be the sole property of the EMPLOYER, and the EMPLOYEE shall have no right, title or interest whatsoever to same.

## 8. AGREEMENT NOT TO COMPETE:

In the event that the relationship of the EMPLOYER and EMPLOYEE is severed or terminated for any reason whatsoever, including but not limited to expiration of the term of this Agreement or subsequent Agreement, whether the same be by Agreement, or otherwise, EMPLOYEE expressly warrants, represents and agrees that he will not directly or indirectly own, manage, operate, control or become connected as an officer, director, personal representative, share or stockholder, employee, consultant, partner, sales person or otherwise with any business or entity involved in the insulation industry within St. Lucie, Martin, Palm Beach, Broward and Dade Counties, in the State of Florida, or within a radius of one hundred (100) miles from any branch or business location of the EMPLOYER, or any affiliated corporation of the EMPLOYER, now existing or hereinafter created, whichever is greater, for a period of twenty-four (24) months from the date said EMPLOYER/ EMPLOYEE agreement is severed or otherwise terminated; nor will the EMPLOYEE compete with or solicit customers, other employees or business of the EMPLOYER or any affiliated corporations or businesses, including employees in any manner directly or indirectly; or become interested in any competitor of the EMPLOYER in insulation and/or business of insulation in the construction industry doing business within the state area for twenty-four (24) months.

The EMPLOYER and EMPLOYEE expressly acknowledge and agree that a breach by EMPLOYEE of this covenant will cause irreparable injury to the EMPLOYER, the damages of which will be difficult or impossible to ascertain. Accordingly, EMPLOYEE expressly and voluntarily agrees that EMPLOYER shall be entitled to obtain an injunction and/or temporary restraining order from any court of competent jurisdiction restraining EMPLOYEE from further conduct in violation of this clause. Furthermore, EMPLOYER shall be reimbursed all costs and expenses incurred in protecting its interest including but not limited to reasonable attorney's fees. The EMPLOYER and EMPLOYEE agree that due to the complex and confidential nature of this business that each party expressly acknowledge and agree that shoudl EMPLOYEE breach the covenant not to compete contained herein, that in addition to al other right and remedies hereunder, EMPLOYEE shall pay the EMPLOYER the minimum sum of six (6) months salary as liquidated damages to help offset the irreparable and uncertain damages sustained by the EMPLOYER.

If EMPLOYEE shall be in violation of the covenant not to compete set forth herein, then the duration of the 24-month period shall be extended for a period of time equal to the period of time during which such breach or violation occurs. Additionally, if the EMPLOYER seeks injunctive relief, then the duration of this Agreement shall be extended for a period of time equal to the pendency of such proceedings, including

all appeals taken by the EMPLOYEE.

        If any such restriction contained herein is found by any court of competent jurisdiction to be unenfoceable because it extends for too long a period of time or cover too great a range of activites or in too broad a geographical area, it shell be interpreted to extend only over the maximum period of time, range of activities or geographical area as to which it may be enforced. (DE 13-1).

Mr. Portland testified on behalf of USI that Defendant Godwin had access to such confidential business information not available to the public as:

        all of our data, all of our pricing information, our costs, our margins, our price by customer, our cost by customer. Our margins by line of business. Our strengths and weaknesses as a company, where we had good managers, where we had poor managers, where we excelled in terms of our service, where we had service issues. So our strengths and weaknesses, our skills and capabilities, our prices, our costs. Anything that would go into competing for business. (Tr. pp. 28-31).

In fact, the incentive plan, which Defendant Godwin relied on to establish that USI still owed him a portion of the bonus, specifies that sales incentive was based on gross profit as opposed to revenues. (DE 24, p. 62). While Defendant Godwin disputes that we was ever a National Sales Manager, or a Regional Sales Manager, as he is identified in many documents entered into evidence, Defendant Godwin states that he "assisted salespeople and branch managers in identifying potential projects to bid on and assisted them through the bidding process," and had responsibilities in Florida, Texas, and responsibilities for single customers located in Arizona, Colorado, New Jersey, and Southern California (DE 13, p. 3). Defendant Godwin also testified that he was responsible for accounts of national and regional builders, and that, while USI employed six thousand (6,000) people, sometimes Mr. Portland, the CEO, set prices for the projects for which Defendant Godwin handled the bids. (Tr. pp. 116-21).

Defendant Godwin would have the Court believe that he simply brought customers he had

developed relationships with during his previous employment to Professional Insulators and then USI, then only maintained relationships with them while opportunities for bids were available in public permitting databases and somebody else set the prices, which were not a secret and expired within a very short period of time. This picture is inconsistent with Defendant Godwin's position within USI, his level of compensation, and the fact that the CEO was, at least sometimes, involved with his sales. The fact that Defendant Godwin's bonus was based on gross profit rather than sales is an indication that Defendant Godwin was privy to at least some information regarding USI's costs and supports Mr. Portland's testimony.

Defendant Godwin worked for Professional Insulators and then for USI since July 1, 2003 (DE 13, p. 1). Therefore, his argument that pricing and cost information becomes obsolete so quickly as to not merit protection does not carry much weight. Defendant Godwin has been privy to this information continuously for over eight (8) years, which is long enough to become intimately familiar with the company's internal strengths and weaknesses in costs, pricing, and levels of service. Some of this information, such as pricing delivered to customers, inevitably loses its confidential nature at some point. This, however, does not mean that a person who was senior enough to assist branch managers with their bidding processes was not privy to any confidential business information, such as USI's costs upon which the bids relied.

In *Proudfoot Consulting*, the Eleventh Circuit noted that courts take two approaches in determining when legitimate business interest in confidential business information will justify a broad restriction that prevents an employee from working for a competitor while interpreting Florida law. 576 F.3d at 1236, n. 12. Under one approach, the restriction is enforceable if the employee is in a position with the new employer to use the former employer's confidential information. *Id.*

Under the other approach, the protection is justified if disclosure would be inevitable in the employee's new position. *Id.*

Here, whether the first or second approach is used, the restriction is justified. Defendant Godwin, as IBP's Vice President of Sales, would be in the position to use the information regarding USI's strengths and weaknesses in overseeing and training IBP's sales force. Further, it would be inevitable for Defendant Godwin to use USI's confidential information in performing his duties for IBP. While Defendant Godwin argues that there is no conflict with USI's interests because his position at IBP is not in sales, as a person responsible for training IBP's over 300 sales people, he will likely be in a position to use USI's confidential information with greater negative impact to USI than if he were simply selling IBP's products and services.

Therefore, this Court recommends that the District Court find that Plaintiff has established a legitimate business interest for protecting its confidential business information, such as its margins by line of business, its costs and pricing per customer, and strengths and weaknesses of its branch managers.

The 2003 Agreement prevents Defendant Godwin from competing against the employer "within St. Lucie, Martin, Palm Beach, Broward and Dade Counties, in the State of Florida, or within a radius of one hundred (100) miles from any branch or business location of the EMPLOYER, or any affiliated corporation of the EMPLOYER, now existing or hereinafter created, whichever is greater, for a period of twenty-four (24) months from the date said EMPLOYER/ EMPLOYEE agreement is severed or otherwise terminated." Mr. Portland testified that Defendant Godwin's responsibilities were national (Tr. p. 28). Defendant Godwin denies that he was ever a National or Regional Sales Manager, but admits that he dealt with national and regional builders (Tr. pp. 100,

120), which supports Mr. Portland's testimony to some extent. Ms. Richter's declaration states that USI operates twenty-nine (29) branches and offices in thirteen (13) states (DE 24, p. 1). In Florida, USI has branches in Jacksonville, Tampa, Fort Myers, Orlando, and Boynton Beach. *Id.* It appears reasonable that USI needs to protect its confidential pricing, costs, margins and strengths and weaknesses of its managers information in markets close to its locations. *See AutoNation, Inc.v. O'Brien*, 347 F. Supp. 2d 1299 (S.D. Fla. 2004) (preliminary injunction issued prohibiting former employee from working in any geographic space in which AutoNation operated, which included 75 dealerships nationwide). Therefore, this Court recommends that the District Court find that the restrictive covenant is reasonably necessary to protect USI's legitimate business interest within the geographic areas specified.

Lastly, the parties did not address duration of the restrictive covenant in any detail. In Florida, a court is supposed to presume reasonable in time any restraint of six (6) months or less and shall presume unreasonable any restraint lasting more than two (2) years when restrictive covenant is directed towards a former employee. Fla. Stat. § 542.335(1)(d)(1)(a). The court is to construe restrictive covenants in favor of providing reasonable protection to established legitimate business interests and can limit otherwise enforceable restrictive covenant in time or place, or both. Fla. Stat. § 542.335(4)(h); *Marine Turbo Eng'g, Ltd. v. Turbocharger Serv. Worldwide, LLC*, 11-60621-CIV, 2011 WL 6754058 (S.D. Fla. Dec. 22, 2011) (citing *Health Care Fin. Enter., Inc.v. Levy*, 715 So.2d 341, 343 (Fla. 4th DCA 1998). However, restrictive covenants with unlimited duration are presumptively unreasonable. *See Proudfoot*, 576 F.3d at 1232, n. 8 (11th Cir. 2009).

Thus, the restriction in question here is at the outer limit of what is not presumptively unreasonable but it is unclear why such duration is reasonably necessary to protect USI's confidential

business information. Furthermore, the covenant preventing the employee from disclosing the information obtained during the course of employment has no temporal limitation at all. Defendant Godwin testified that pricing information is only valid for thirty (30) to sixty (60) days because prices of insulation are tied directly to energy costs (Tr. pp. 121). However, the knowledge of the company's branch manager's strengths and weaknesses definitely has a longer shelf life. As the restrictive covenant should be found to be otherwise enforceable and the court is supposed to modify the duration rather than find the covenant unenforceable, this Court recommends that the District Court limit the duration of the restrictive covenant. Taking guidance from the statute and taking into account the nature of the confidential business information, six (6) months appears reasonably necessary to protect USI's margins, pricing, costs, and information regarding strengths and weaknesses of its managers.

The restrictive covenant in question calls for an extension of its duration for a period of time equal to the period of time during which breach of the Agreement occurred. (DE 13-1). Additionally, according to the Agreement, if the employer seeks injunctive relief, then the duration is extended for a period of time equal to the pendency of the proceedings. *Id.* In Florida, tolling of the non-competition agreement while a violation is taking place so that the former employer receives the competition-free period that was intended in the bargain is allowed. *Capelouto v. Orkin Exterminating Co.*, 183 So.2d 532 (Fla. 1966); *Sunbelt Rentals, Inc. v. Dirienzo*, 487 F. Supp. 2d 1361 (S.D. Fla. 2007).

Here, this means that the injunction should last from the date of the order for the period reasonably necessary to protect USI's legitimate business interest, or for six (6) months as has been discussed above, because Defendant Godwin began violating the 2003 Agreement, as discussed in

the next section, within days of terminating his employment with USI. The provision allowing

extension of the injunctive period for the length of the judicial proceedings appears to be punitive

in nature rather than reasonably necessary to protect the employer's business interests and USI did

not establish why it would be reasonably necessary to prolong the injunction for this period of time.

Therefore, this Court recommends that the District Court find that the restrictive covenant is

enforceable as limited to six (6) months from the date of the order granting the injunction.

### ii. Material breach of the 2003 Agreement and damages

Working for a competitor constitutes material breach of a non-competition agreement. *See*

*Pitney Bowes Inc. v. Acevedo*, 08-21808-CIV-Jordan, 2008 U.S. Dist. LEXIS 61194, at *12 (S.D.

Fla. July 28, 2008) (applying Florida law); *T.K. Commc'ns, Inc. v. Herman*, 505 So.2d 484, 485

(Fla. 4th DCA 1987). Because determining damages of an employee's breach of a non-competition

agreement is inherently difficult, an injunction is a normal remedy in such cases. *Miller Mech., Inc.*

*v. Ruth*, 300 So.2d 11, 12 (Fla. 1974).

Here, Mr. Portland testified that IBP competes with USI in twelve (12) markets (Tr. p. 36).

Defendant Godwin testified that, while IBP also installs insulation, his position with IBP does not

involve sales but rather involves overseeing and training IBP's over 300 salespeople, and that, unlike

USI, IBP does not compete for business from national and regional builders (Tr. pp. 127-29). At this

stage of the proceedings, this Court finds testimony that USI and IBP are direct competitors credible.

Thus, this Court recommends that the District Court find that USI established substantial likelihood

of success on the merits of its breach of contract claims against Defendant Godwin.

### 2. USI did not establish substantial likelihood of success on the merits of its tortious interference claims

The elements of the cause of action for tortious interference are (1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1995) (manufacturer intentionally interfered with distributor's business relationships with its customers when manufacturer ran a newspaper ad which stated that distributor was not current on its debts and invited customers to shop at the manufacturers future new stores following distributor's decision to convert its stores to distribute a different manufacturer's furniture). The existing business relationship does not have to be evidenced by an enforceable[4] contract, but may be evidenced by an actual and identifiable understanding or agreement which in all probability would have completed if the defendant had not interfered. *Id.* at 814–15. While this cause of action can definitely be premised upon relationships with present and prospective customers, it cannot be based on the relationship with the public at large, or customers who bought from the business before and may buy from it again. *Id.* (there was no identifiable business relationship with 89,000 past customers who may return to make a purchase in the future).

USI claims that IBP tortiously interfered with USI's business relationship with Defendant Godwin by inducing him to compete with USI despite knowledge of the existence of the 2003 Agreement with Professional Insulators and due to IBP's intentional failure to investigate whether Defendant Godwin was restricted from employment with IBP. USI also claims that Defendants IBP

---

[4]It may be evidenced by an unenforceable agreement if the jury finds that an understanding between the parties would have been completed had the defendant not interfered. *Ethan Allen, Inc.*, 647 So.2d at 814 (Fla. 1995).

and Godwin interfered with its business relationships with its clients.

Mr. Fermier, Vice president of human resources at Edwards Companies, including IBP, states in his declaration that Defendant Godwin told him about his non-compete agreement with Professional Insulators in response to Mr. Fermier's inquiry regarding possible restrictions that would impact Defendant Godwin's employment with IBP, but that Defendant did not have a copy and Mr. Fermier does not state that the inquiry progressed any further (DE 10). There is merit in USI's assertion that IBP should have investigated further whether Defendant Godwin was bound by an enforceable non-competition agreement. However, USI must show that IBP intentionally interfered with the business relationship, and Mr. Fermier's possible lack of follow up could have been due to many reasons other than intent.

As to the interference between USI and its clients, USI has to identify specific clients with whom it would have concluded deals if not for IBP's and Defendant Godwin's intentional and unjustifiable interference because it cannot rely on its general relationship with its clients. USI identifies Aaron Wilson of Meritage Homes as one of the clients USI stands to lose because of the Defendants. However, Defendant IBP submitted Mr. Wilson's declaration where he denies that Defendant Godwin ever solicited Meritage Homes on behalf of IBP. (Wilson Decl., DE 9). Therefore, USI has not established intentional interference at this stage of the proceedings, and this Court recommends that the District Court make a finding to this effect.

## B. Irreparable harm

In Florida, violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement. Fla. Stat. § 542.335(j); *AutoNation, Inc.*, 347 F. Supp. 2d at 1307 (S.D. Fla. 2004) (applying Fla. Stat. § 542.335); *Pitney Bowes Inc., v. Acevedo*,

08-21808-CIV-Jordan, 2008 U.S. Dist. LEXIS 61194, at *13 (S.D. Fla. July 28, 2008) (applying Fla. Stat. § 542.335 in a diversity case). After a violation is established, the burden shifts to the party opposing enforcement of the restrictive covenant to rebut the presumption. *AutoNation, Inc.*, 347 F. Supp. 2d at 1307 (S.D. Fla. 2004); *Pitney Bowes Inc., v. Acevedo*, 08-21808-CIV-Jordan, 2008 U.S. Dist. LEXIS 61194, at *13 (S.D. Fla. July 28, 2008).

Here, Defendants argue that IBP already agreed to keep Defendant Godwin "outside of 100 miles from USI branches until Mr. Godwin and USI were able to resolve this issue" and "instructed Mr. Godwin to work only outside the 100 miles radius from USI branches until January 15, 2012." (Fermier Decl., DE 10). However, this is a temporary restriction, and it does not originate with Defendant Godwin, who is the Defendant against whom USI brings the breach of contract claims. Therefore, this Court recommends that the District Court find that the irreparable harm element is satisfied.


## C. Harm to Defendants does not outweigh injury to USI

Courts do not hesitate to find that an injunction's potentially severe impact upon a former employee does not outweigh harm to the former employer for purposes of granting a preliminary injunction as long as the employee has potential for employment that would not violate the non-competition agreement. *See Ciena Corp. v. Jarrad*, 203 F.3d 312, 323 (4th Cir. 2000); *Pitney Bowes Inc., v. Acevedo*, 08-21808-CIV-Jordan, 2008 U.S. Dist. LEXIS 61194, at *15-16 (S.D. Fla. July 28, 2008).

Here, Mr. Portland testified that IBP and USI compete for the second place in the insulation industry (Tr. p. 36), or that IBP is one of USI's largest competitors. Therefore, USI stands to lose

its competitive advantage against one of its largest competitors if Defendant Godwin uses USI's confidential business information in his employment with IBP, which is a very considerable harm.

While USI did not demonstrate substantial likelihood of success on the merits of its claims against Defendant IBP, IBP will be negatively affected by an injunction against Defendant Godwin because IBP would lose him as an employee for the effective period of the injunction. Defendant Godwin stands to lose his ability to earn income if he is enjoined from working for IBP, which is a very severe impact. However, Defendant Godwin testified that he owned a trucking company and worked for a roofing company prior to joining Professional Insulators (Tr. pp. 99-100). In fact, Defendant Godwin testified that most, if not all, clients he dealt with at USI were contacts he developed while working for his previous employers, Dow Corning Construction Products and Roof Tile Specialists (Tr. p. 129). The Agreement only prevents Defendant Godwin from working for a business "involved in the insulation industry." Therefore, Defendant Godwin can continue to work in roofing or any other sector of the construction industry and the impact upon him, while severe, would not be catastrophic and does not outweigh the harm to USI. Accordingly, this Court recommends that the District Court find that harm to Defendants does not outweigh the injury to USI.

## D. Enforcement of the 2003 Agreement is not against public interest

Florida favors enforcement of valid restrictive covenants. *See* Fla. Stat. § 542.335; *AutoNation, Inc.v. O'Brien*, 347 F. Supp. 2d 1299, 1308 (S.D. Fla. 2004). In order to refuse enforcement of an otherwise enforceable restrictive covenant on the ground that it violates public policy, the court must find that public policy in question substantially outweighs the need to protect the established legitimate business interest. Fla. Stat. § 542.335(i).

Here, there was no showing of any public policy requiring the Court to refrain from enforcement of the restrictive covenant in question. Therefore, this Court recommends that the District Court find that USI satisfied all prerequisites for the preliminary injunction and enjoin Defendant Godwin against violating the restrictive covenants of the 2003 Agreement for six (6) months.

## E. USI should be required to post bond

A court may only issue a preliminary injunction if the movant gives security that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined. Fed. R. Civ. P. 65(c); Fla. Stat. § 542.335(j). While courts have discretion in requiring security, and vary widely in the amount required, the measure of the appropriate amount is the salary that the former employee would be prevented from earning. *Ciena Corp. v. Jarrad*, 203 F.3d 312, 322 (4th Cir. 2000) (upholding district court's injunction against solicitation of former employer's clients and order of $2,500,000 bond where defendant was a key employee of the former employer having been earning $300,000 and where former employer had a very strong case for the enforcement of the non-competition agreement); *Rathman Group v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989) ($10,000 bond was insufficient where defendant may have lost gross income of $13,000 per month as a result of the injunction); *Pitney Bowes Inc., v. Acevedo*, 08-21808-CIV-Jordan, 2008 U.S. Dist. LEXIS 61194, at *17 (S.D. Fla. July 28, 2008) (applying Florida law and requiring plaintiff to post a bond of $50,000, or an amount sufficient to compensate the defendant for any loss incurred should he prevail on the merits).

Here, Defendant Godwin testified that his compensation at IBP consists of $150,000 a year base salary, with $5,000 a month in guaranteed commission, $650 a month car allowance, expenses

and one half percent of top line increases in sales (Tr. pp. 139-40).[5] Sales increases, of course, are unknown, but the salary and reimbursements equal approximately $18,150 per month (without expenses which would not be incurred or reimbursed). Therefore, should Defendant Godwin prevail on the merits, he would have potentially wrongly lost six (6) months worth of that compensation, or approximately $108,900. Therefore, this Court recommends that the District Court require USI to post bond in the amount of $110,000.

## CONCLUSION

In conclusion, **IT IS HEREBY RECOMMENDED THAT** Plaintiff's Emergency Motion (DE 4) be **GRANTED** as to the Preliminary Injunction, and Defendant Godwin be enjoined against violating the restrictive covenants of the 2003 Agreement for six (6) months.

## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T. K. Hurley, Senior United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) (2010) (providing that "within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). *See also* Fed. R. Civ. P. 72(b) (2010) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may

---

[5] There was also a sign-on bonus, which would have been already received. (Tr. p. 238).

respond to another party's objections within 14 days after being served with a copy.")  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE and SUBMITTED** this 3 day of February 2012, at West Palm Beach in the Southern District of Florida.

*James M. Hopkins*

_____

JAMES M. HOPKINS,
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Hon. Daniel T. K. Hurley, Senior United States District Court Judge for the Southern District of Florida
Counsel of record